United States v. Stephen Goff Ms. Kamazole? Thank you. Good morning. May it please the court, I'm Assistant United States Attorney Serena Kamazole, representing the appellant, the United States in this matter, and I'd like to reserve three minutes for rebuttal. The government respectfully requests that this court reverse and remand the four-month sentence in this case because it represents an extreme 89% downward variance from the advisory range, which was simply not justified by the circumstances in this record. The reasons cited by the district court are weak reads upon which to base such an extreme variance, although they might justify some modest downward variance for several reasons. The first is some of the reasons cited by the district court were duplicative of reasons already taken into account in calculation of the guideline range. In addition, some of the reasons represent discouraged factors under a departure type analysis in guidelines. And thirdly, the government 53A factors fail to take into account fully the seriousness of this offense, the need for general deterrence, as well as the need to avoid unwarranted sentencing disparities. If I could begin by discussing the seriousness of this offense, this defendant paid to subscribe to a website from which he could download images of child pornography. And the Congress and the United States Sentencing Commission have expressed the belief that stringent sentences should accompany this type of behavior in order to stop the flow of child porn at every level in the distribution chain. Can I ask a question there? You, in note four in your opening brief, make the assertion that the district court's excess of generous can be seen in part because Mr. Goff received a significant reduction in the sentence beyond what would have been called for vice conduct because, if I'm reading it right, because it was undisputed that Goff received images by downloading them from a paid child porn website, the government could have prosecuted Goff under another section. Is it appropriate for this court to take into account the government's charge bargaining decision in deciding whether the variance was too much? Or does the government have to live with what the government decides it's going to charge? Well, I think the government has to live with what it decides it's going to charge based on the charge bargaining that occurred here. I think it also says something about what the government believes is a reasonable and fair sentence, which is that the five-year mandatory minimum that would accompany that crime of receipt is too high, given the circumstances of this case. And that's fully consistent with what we're arguing here. So despite what you're saying on that note, I take it you're acknowledging that it's really not for us to be looking at what this would be like compared to a five-year minimum mandatory, but what it was as compared to what the guideline sentence was for the charge the government actually decided to bring, right? That's correct. And that is truly the guidelines range this court should look to. But the court should keep in mind, I believe, that this is a serious offense, and Goff's conduct was serious. And indeed, it did involve receipt, although he is not convicted of receipt. If the guidelines, say, don't consider this factor in arriving at the guideline sentence, can under 355.3, can the court still consider that factor in its reasonableness analysis? Well, Judge Roth, I think to use as an example the court's consideration of the defendant's lack of criminal history. It's clearly something already taken into account in setting forth the guideline range, the criminal history category, the fact that he has no criminal history points. In addition, the fact that he did not molest any children or exploit any children with regard to this specific offense, he's sentenced under a lower guideline range. However, as the district court found here, the defendant had lived an exemplary life up until the point he committed this crime. And that is something she could definitely take into account in 3553A1, the background and circumstances of this defendant. But I don't believe it's enough to justify such an extreme variance, particularly given the fact that not only is it duplicative of the guidelines, but also... But you're saying that some consideration... Certainly, under A1. ...under 355.3 can be given of either factors not permitted under the guidelines, or how about factors already considered under the guidelines? I think some consideration can be given, but not so much to justify such an extreme variance. And certainly, his background, even though someone might be criminal history category one, he may not have had the most exemplary background. But I would like to point out that the Sentencing Commission data suggests that over 83% of all the defendants who are convicted of this same crime are criminal history category one, because this is the type of crime where people tend to have exemplary backgrounds. They are professionals. They tend to be middle class. They tend to have charitable work and civic work, and no criminal history category. So the fact that he was criminal history category one does not make him that unusual to justify such a departure. Although, getting back to your question, I think the court can consider it in 3553A1. When Congress specifically states, as they did in this category of offenses under the PROTECT Act, that cases involving child pornography are particularly serious offenses, is that kind of congressional directive or intent, should that carry more weight for the sentencing court in the determination of the appropriate sentence than a violation where Congress had not spoken so clearly? I think it should inform the district court judge's analysis of one of the factors, the seriousness of the offense, and also the factor which encompasses the guideline range. Because here the guideline range for this type of crime is relatively high because of the feeling of Congress and the sentencing commission of the importance of stamping out the demand for this product, which fuels the market. And I think that's something that the court should take into account in determining the seriousness of the offense, both the type of offense it is and this defendant's particular conduct. And here, he did possess over 600 images at one point before he deleted them. And that is fairly serious. We see a wide variety of defendants who possess child porn. Some possess three images. Some possess between 10 and 150. Some possess 300. And he had over 600. I thought you had acknowledged that that's right, duplicates, and that shouldn't be counted. Well, we would not, had we known there were duplicates, we would not have asked for a five-level enhancement for the number of images involved in the offense because we think it is the seriousness of the offense. That particular enhancement is designed to go to the harm to each particular child appearing in each particular photograph. To the extent a photograph is duplicated, there's no additional harm to count. And that's why, were this case remanded for resentencing, the government would only ask for a four-level enhancement and not a five-level enhancement. The court never actually ruled on your request for a five-level enhancement, did it? It doesn't appear in the transcript, Your Honor. It only appears in what the court cited with the government in ruling on that enhancement in its statement of reasons where it set forth the range of 33 to 41, I'm sorry, it set forth the range of 37 to 46 months. That's how we know the court must have ruled in the government's favor and must have set the offense level there. You made reference in your opening comment and also clearly in your brief about the 89 percent variance. This is a quantitative, certainly a quantitative variance, a variance of a quantitative nature. Sort of like our discussion of punitive damages yesterday. What's the ratio? But in this case, as opposed to some other cases that are under consideration by this court, the district court did sentence Mr. Goff to four months in jail. Is there the qualitative difference in this sentence that there would be if the sentence were won to probation and not to any jail time at all? And does that make a difference in our consideration? I think a sentence of probation would arguably represent 100 percent variance and this, you're correct, is only an 89 or in fact perhaps an 87 percent variance given the lower guideline range we would start with. But I think that regardless of whether it's an 89 or 100 percent variance, you really have to look to the reasons that are justifying it. And there have been cases where defendants prosecuted for this exact same crime for similar conduct have received 100 percent variance and they received a probationary sentence and we haven't appealed those cases because of the circumstances of the defendants there were more compelling. They had better psychiatric testimony on their behalf about the effects of incarceration. They didn't have as many images. The images were not as horrific. So I do think that even though it's not 100 percent variance, the 89 percent variance is certainly enough that should be justified by compelling reasons. As this court said in Manzella, the farther away you get from the guidelines range, the more compelling the reasons should be. That sounds similar to the phraseology used by the 8th Circuit in the Claiborne case which is now on appeal before the Supreme Court. And in fact, I did want to mention that the government believes that this court should put off ruling on this case until the Supreme Court decides Claiborne, which should be by the end of this term. We think it would greatly inform the decision of this court and district courts in the future. One other question. Do you believe that the district court's explanation for a sentence in this case was adequate under this circuit's jurisprudence? Post-Booker jurisprudence? This court's post-Booker jurisprudence has discussed giving a great deal of discretion to the district court and that the district court must give reasons that are logical and consistent with the 3553A factors. And the district court here certainly did address many of the 3553A factors that were relevant. The government primarily objects to the weighing of those factors and to the court's lack of a fuller emphasis on the seriousness of defense and deterrence. And really no weight, it seems, has been given to the creation of an unwarranted sentencing disparity nationwide. And so I think even under this court's jurisprudence thus far, which has involved mostly cases where the sentence was very close to the range or within the range, I think this court certainly there's more room to create more jurisprudence to set forth legal principles about how to assess a sentence that is so far from the range under these circumstances. I see that my time is up. We do delay our decision pending the decision in Claiborne. I presume you would like an argument on the impact of Claiborne? Yes, Your Honor, I'd be happy to brief it in a letter after the decision comes down, if that would be permissible. Thank you. We'll have you back on your bottom. Mr. Ballarato? Yes, good morning, Your Honor. Thank you for having me. I represent Mr. Goff. It's the first time I've ever sat at that table. It's a different experience. I would like to say initially that I think that the United States Attorney really identified the issue in this matter right at the very end of her presentation when she said that they really disagree with the way Judge Thompson weighed the factors. I think that the record is very clear that she addressed all of the factors. She identified all of the factors. But the government really disagrees with the conclusion that she reached after weighing all of these factors. And as we know, that's... Isn't that inherent in a reasonable analysis though? At some point reasonableness is a range, but at some point somebody says, well, now we've crossed out a reasonableness. You can frame that in terms of weighing, but isn't that what reasonableness analysis is all about? Well, it can be. I appreciate... I wrote down just what you said, reasonableness is a range and not a point, which was cited, I think, in Cooper based on the Seventh Circuit case. But we also have to remember that they are sitting at this table in this situation and that the standard of review is one for unreasonableness and that there is a substantial amount of deference that is given to the sentencing judge. I mean, that's what you're looking at. As I believe I read in one of the cases this court is not a sentencing court and it probably doesn't want to be a sentencing court, but it's merely to review the standard that was set forth in Cooper. Did the judge consider the 3553A factors? Did she recognize what the applicable guideline range was? And was she reasonable in her evaluation of those factors? Now, there's a real disagreement, I think, between the government and the defense concerning this Claiborne issue. The way the defense is going to go about this is that the judge will be fairly uncomfortable with this continued application of percentages. This is an individualized specific sentence that was imposed by the judge on a human being for pun... to arrive at the appropriate punishment that's necessary, but nothing more. Let me ask a question on that, if I might. What... Are you saying, sir, that it's not a relevant thing for this reviewing court to be looking at in... as a point of reference on what the guideline range is and how this varied from the guideline range? No, you're right. I'm not saying that. If I can... if I can clarify that. What I'm saying is that the... and the Supreme Court may eventually do this, but as we are here now, since Booker has been decided, the Congress has not come back and modified 3553 in any way. As it stands now, 3553A sets forth what the guideline range is as one of the seven factors. The way the government has posited the argument is that the gu... the guideline application is a super factor and everything else has to be weighed against it. And the language in many of the other cases indicates that the guideline range is a starting point for the judge. Now, you had said this was an individual and it should be sentenced as an individual. Is it appropriate for us to... look, the government has pointed to other sentencing decisions by Judge Thompson saying, hey, look, there... this is one of five cases in which dramatically lower sentences have been given to child porn convicts. And therefore, at least the implication of the government's argument is she's not doing individualized sentencing. She's just got a fundamental disagreement with the policy that Congress has stated and therefore it's reversible. What's your response to that? I'm very uncomfortable with that. When I read it in the brief, I'm a former assistant U.S. attorney myself. And when I saw that, I felt that I... I just was uncomfortable with that because, again, as I was uncomfortable with the whole percentage argument. We're now... we're now asking the court to somehow insert into the evaluation what Judge Thompson has done on completely other cases with regard to completely other individuals, completely other circumstances, a completely different application of all the 3553A factors. But with the same crime at issue. Well, the same statute being charged. Let's... we could agree on that, but not necessarily the same crime. And specifically, I suggest why that's important is because not only are you reviewing the crime and the circumstances, but you are reviewing it for unreasonable reasons based on the record below. And I suggest to Your Honor that that's very important in this case because as you may recall in the statement of facts, Judge Thompson was very clear that she imposed the sentence outside the advisory range pursuant to a defense motion to which the government has not objected and not addressed in a plea agreement. Now there are a number of factors here, Your Honor. Clearly, Judge Thompson addressed the nature of the offense and the offender characteristics. And I suggest to you that the letters... she didn't read every letter in the record. There were 50 letters. The courtroom was full. You couldn't get another person in the courtroom. The letters truly were extraordinary. Now, they are all part of the record. They were all part of her reasons, even though she didn't read those letters. But those letters, as we pointed out, showed a dedication of this individual that was truly extraordinary. You know, he was a Yale graduate and he was... I mean, does that... Well, here's why... I mean, I've got a clerk who's a Yale graduate, but I've got clerks who graduated from other universities also. He was a Yale graduate, Your Honor, who worked at a private school teaching children in which he made $50,000 a year, which is the most he ever made. But doesn't... Sorry. Every year he gave back 10% anonymously of his salary back to the school. And isn't Congress concerned about child pornography, not because of what the observers of it do, but because of the impact that it has on the children who are used to pose for these things and the damage it does to those children? And if it's... Congress is worried about the children and stopping this illegal trade to protect the children, does it really matter who the perpetrator is? Well, I agree. I agree first, Your Honor, that Congress is concerned, as they should be. Second of all, I think it does. It is important to decide who the perpetrator is because as we find this in so many other situations, the situation that the perpetrator is in, we may down the road find out that the harsh treatment of the perpetrator is not going to accomplish the end result. That often this situation is a psychological... the result of some psychological disorientation. With computers, it's... you have people who wouldn't go into a bookstore and buy this. That's correct. Or who wouldn't go to Amsterdam and trade in a marketplace for this. But they think they can do it at home on their computer because no one is ever going to find them out. And if they realize that in fact they can be found out, and if they are found out, they're going to have a serious penalty about it, aren't we really going to deter some of these people who wouldn't do it in public places where they could get caught from doing it in private places? I agree entirely, Your Honor. But I guess what I'm suggesting is while that is important, we should not abandon the goal of individualized sentencing based on the factors of 3553A, which is precisely what Judge Thompson did here. She addressed every one of the factors. She explained clearly on the record why she was doing what she did. And interestingly enough, I keep bringing up the issue of the record because we had this whole issue about there was a five-level enhancement as a result of the 600 images. As you may have gleaned from the facts, there's no evidence that at any time he possessed 600 images. At the same time, but he... I mean, he had looked at them and put them in the... put them in a... deleted them from his computer, tantamount to throwing them in the garbage only the garbage man hadn't come. Yeah, the garbage man never comes. That's exactly right. He had no way, the facts were clear, he had no software or no means of retrieving those images. So he would get on the internet, and there's no way of really knowing this, he'd get on his computer, he'd look three, four, five, ten, twenty images, look at them, he'd done all of them, throw them away, virtually destroy them. He would do it again, throw them away, destroy them. There was no way for him to retrieve them. There's no evidence that he ever... Yeah, but is the... I guess we're arguing now about what the aim of the guideline enhancement provision is, but isn't it just as reasonable to conclude that the government is concerned about serial child porn viewers as it is about child porn people who are better organized and save them in folders? I mean, the fact is the man went back again and again and again, and every time he went back and paid money to download one of these things, he was putting money in the pockets of somebody someplace in the world that was abusing and molesting children. And that is what the guideline enhancement is about. It's not whether you're a good scrapbooker, it's about whether you're somebody who does this sort of thing repeatedly. Your Honor, I agree that it is a concern, but I agree that it should be looked at differently, because under the guidelines, it calls for a substantial five-level enhancement for the current possession of 600 images. In this situation, he did not possess, he had seven images. Did he possess them in the past? Yes. That's why we didn't ask for a downward departure under the guidelines. But we felt that under these circumstances, because what happens is he takes them, he looks at them one time, and he destroys them. They're not in a book, they're not on the shelf, they're not being brought down or being brought back up on the computer time after time to look at again, to share with your friends, maybe to trade and do other things with. As Judge Roth explained, you are alone in your room, it comes up on your computer, you look at it, you're done with it, and it's gone forever. And we asked the court to take that into consideration, and I suggest to you that she did. And that was part of the memo that we filed, that the government not only did not respond to, but more importantly, at the time of the sentencing, this is what the United States Attorney said when we addressed this issue about this number of images, and that there should be some consideration, there should be some downward adjustment, if not necessarily a departure. I won't stand here and say Mr. Goff was a great, he had a great organized collection of his images, and he was swapping them out or distributing them. It's not what the facts are. The facts are generally, as Mr. Beller represented to the court, how the images were found on the And this is part of what the government was doing, during the entire course of the sentencing, which is why I suggest to your Honor... Are you suggesting that the Assistant U.S. Attorney is telling in that language, Judge Thompson, go ahead and give him no jail time if you think the images... In fact, I'll tell you... Go ahead. Go ahead and answer that question. I'll tell you exactly what he said, because here's what he said, just three minutes later, when we talked about that five-level enhancement. He said, and this is where the government says, oh, they've argued for a sentence within the range. The U.S. Attorney says, I think that anything other than a sentence of incarceration would send the wrong message to this case. It would not sufficiently punish people who make up the market and talks about that. And then he says, but I think a sentence at the bottom of the guideline range, which I would submit would be 37 months, but in a more generous reading would be 21 months. Some sentence in that range would be appropriate in this case. The 21 months was the bottom of the range without the five-level enhancement. So I guess what I hear you saying is that even the government was prepared to concede that it would be reasonable to go to 21 months, but we're not talking about 21 months here. Didn't you, in effect, didn't you, in effect, also argue in that regard that 21 months would be the appropriate sentence? I have no recollection of that, Your Honor. Check page 48 of the transcript in front of you. And if you did, 48, page 48, and if you did make that argument, isn't there some basis? It seems that you were arguing against the five-point enhancement. Isn't there some basis for which we could conclude that, in fact, four months wasn't reasonable, but 21 months was? Well, I think what I was suggesting here, Your Honor, is that that would be the applicable guideline range considering the number of images. But what I was suggesting, Your Honor, is exactly what the judge did, is that she didn't depart from 36 to 47 months down to four months merely on the offender characteristics. It was a combination of, A, the aspects, the characteristics of the offense, which is this downward adjustment for the number of images and the way they were there, which brings it from a level 21 to a level 16, and the remainder of the departure was based on the extraordinary offender characteristics of this individual, the information that was contained in the letters. Is there any room in here for this Court to be concerned about unwarranted sentencing disparities? Because I understand your argument is very focused on individualized sentencing needs, but if the Court is entirely focused on individualized sentencing, where's the room for concern about unwarranted sentencing disparities that Congress has spoken about strongly? Isn't there, the other judges in New Jersey have been sentencing more, giving more severe sentences, well, guideline, minimum guideline sentences in this type of case? I just don't have any information other than what the government has indicated that maybe some judges are. Isn't that a problem? Sentencing disparity, isn't that what we're trying to avoid so that one person doesn't sit in jail and say, I've got three years to do and this guy next to me did exactly the same thing and he's only doing four months? Well, I think that's exactly what 3553A tries to encourage the courts not to fall into that trap. It's easy, you know, it's so easy for a judge to say, this is the guideline range, this is what I'm going to give him. It's tough out there, and I think that that's why Judge Thompson in this case, in my time as his doctor ran out, imposed not only the four months in jail, not house arrest, but four months in jail, but also imposed the term of 36 months of supervised release. Do you think we ought to hold this case until Claiborne comes down? I think it would be helpful. It would give you a better understanding of how to mix the guideline computation into the mix with the other 3553A factors. I think that it could make a substantial difference. If we did, would you like to comment on what they say? I would, yes. Thank you. Thank you very much, Your Honor. Mr. Khamis. Thank you. I only have a few points to make, starting where Mr. Bellarato began himself with the discretion that is due the district court at this juncture. In Booker, the Supreme Court remedial opinion talked about the need for appellate review to avoid unwarranted sentencing disparities, and appellate review must mean something. It can't mean complete unfettered discretion to the district court, and the government simply argues that where the variance is extreme, there must be some more compelling justification, and that is why complete unfettered discretion cannot be permitted. The other problem is that we hope that this court can give some more legal guidance to the district courts in this area so that we don't face such disparities that could take us back to the pre-sentencing reform act days where . . . When you say in this area, what do you mean? Well, in the area of child porn offenders, for one thing, but also in the area of extreme divergences, extreme variances. I think district courts in this circuit would benefit from does fear that we could go back to the pre-sentencing reform act days with regard to certain crimes where one of the main factors driving a defendant's sentence is what courtroom they appear in. But I was a district judge before the sentencing guidelines, and I much preferred giving out sentences before the guidelines than after, and Judge Jordan was an assistant U.S. attorney who was always trying to persuade me to give what he felt was a just sentence, which was not necessarily what the defendant . . . You can only do your best. I think a fair reading from the transcript, Judge Jordan, is that the AUSA here below did think 21 months would be a reasonable sentence, and I could say I don't think I would be up here today if the defendant had received a 21-month sentence because the government would have felt that was fair. And I wanted to just respond quickly to Judge Roth. He had asked about other potential disparities in the District of New Jersey, and I can only tell you the rough data I know, which is with regard to the RegPay investigation that netted 53 defendants in New Jersey. Of those 53, 42 have been sentenced, and of those, 10 received downward variances under Booker. One received an upward variance under Booker. However, most of these variances that we see are in the range of a 25 percent discount or maybe a 33 percent discount, and they're not as large, and we haven't appealed those. And they're just simply not as large as the ranges . . . I'm sorry, as the variances we've been seeing from Judge Thompson. Were any of these other five cases of Judge Thompson's that you referred to in your briefing RegPay cases? Four of the five are RegPay cases. Matthews, Remesey, Goff, this case, and Leitchak. And Leitchak is the only case where we have a current notice of appeal, but the clerk of the court has issued a stay in the briefing schedule in that case pending the outcome of this case, because whatever this panel rules will definitely inform the government's Thank you very much. Thank you. I want to thank both counsel for very, very helpful arguments, and we will certainly take this case under advisement, and in all likelihood, we will withhold a final decision on this case until the United States Supreme Court makes their determination in Claiborne and would invite, if that's the case, invite that you submit your respective positions. We'll probably send a letter out to confirm that, but you should anticipate getting that kind of a word. Thank you very much, counsel. Thank you very much, counsel. We'll take a brief five-minute recess and then return. Please rise. This court is now in recess. Thank you. Thank you. Thank you.